IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DERIC LaVELLE MAY, # 209534, | : | |
| Plaintiff, | : | |
| vs. | : | CIVIL ACTION 15-230-KD-M |
| GARY HETZEL, *et al.*, | : | |
| Defendants. | : | |

REPORT AND RECOMMENDATION

This § 1983 action, filed by an Alabama prison inmate proceeding *pro se*, was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4) for appropriate action. Plaintiff, who is known to the Court as a "three striker," filed a Motion to Proceed Without Prepayment of Fees when he filed his Complaint instead of paying the $400 filing fee, which he is required to pay as a "three-striker" unless he meets the exception to 28 U.S.C. § 1915(g). Plaintiff is aware of this requirement, as several of his actions have been dismissed pursuant to § 1915(g). After reviewing Plaintiff's Complaint, it is recommended that this action be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g).

I. Applicable Law.

Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section [28 U.S.C. § 1915] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

The purpose of this section is to curb abusive prisoner litigation by requiring a prisoner who has had three actions or appeals dismissed as meritless to pay the full filing fee when his next action is filed. *Dupree v. Palmer*, 284 F.3d 1234, 1236 (11th Cir. 2002). "The only exception to section 1915(g) is if the frequent filer prisoner is 'under imminent danger of serious physical injury.'" *Rivera v. Allin*, 144 F.3d 719, 723 (11th Cir. 1998), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199, 215-16 (2007).

In the present action, Plaintiff filed a Complaint that is essentially a duplicate of the Complaint in *May v. Stone,* CA No. 15-25-KD-B, 2015 WL 3459035 (S.D. Ala. June 1, 2015), *notice of appeal filed* (June 11, 2015), which was dismissed pursuant to 28

U.S.C. § 1915(g).[1] The present action's Defendants are the same as the named Defendants in the prior action, namely, Karen Stone, a medical doctor at Holman Correctional Facility ("Holman"); Bennie Andrews, a registered nurse and the Health Services Administrator at Holman; and Gary Hetzel, Warden at Holman. (Doc. 1 at 5-6). The present Complaint's allegations vary only slightly from the prior action, with the chief variation being the specific claim against Defendant Hetzel, which states: "(Hetzel) failed to install any form of audit procedures to check performance of it[]s contractor of medical services, therefore, he allowed to exist the deprivation of adequate medical care." (*Id.* at 6)(alteration in original). The claim against Defendant Hetzel in the prior action states: "On March 27, 2014 (Hetzel) failed to ensure that the defendants were adequately trained, failed to oversee them and discipline them." (Doc.1 at 6)(alteration in original). The other variations are few and are mostly grammatical changes.

The primary reason that the prior action did not satisfy § 1915(g)'s exception was Plaintiff did not show that he was "under imminent danger of serious physical injury" when the

[1] "[A] trial court's judgment . . . normally takes effect despite a pending appeal." *Coleman v. Tollefson*, ___U.S. ___, 135 S.Ct. 1759, 1764, ___ L.Ed.2d ___ (May 18, 2015) (ruling that a district court's judgment that counted as a prisoner's third strike was to be counted as the third strike even though the prisoner was appealing the district court's judgment).

Complaint was filed in January, 2015, due to the allegations against the named Defendants having transpired from March, 2014, through May, 2014. 2015 WL 3459035, at *4. Now, in the present action, his allegations are essentially the same and arise during same time period, March, 2014, to May, 2014, but the time of the present Complaint's filing between April 20, 2015, when Plaintiff signed the Complaint, and April 27, 2015, when it was postmarked (Doc. 1 at 9-10), is even further removed in time from when Plaintiff's claims arose. *See Houston v. Lack,* 487 U.S. 266, 276, 108 S.Ct. 2379, 2385, 101 L.Ed.2d 245 (1988) (filing occurs when a prisoner delivers a pleading to prison officials for forwarding to the court). Moreover, in both Plaintiff's present and prior actions, he identifies the date of March 27, 2014, as when the complained of conduct occurred. (Docs. 1 at 4).

Inasmuch as the Court, namely, District Judge DuBose and Magistrate Judge Bivins, previously ruled on these allegations, the undersigned hereby adopts the reasoning set forth in *May v. Stone,* CA No. 15-25-KD-B, 2015 WL 3459035, *adopted* (S.D. Ala. June 1, 2015), *appeal filed,* (June 11, 2015), and incorporates the majority of its opinion, which is set out below.

> Even though May is known to this Court as a "three-striker," the Court has nevertheless reviewed the records of the United States District Court for the Southern, Middle, and Northern Districts of Alabama to verify that he has three or more *in forma*

*pauperis* actions or appeals that were dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief can be granted. From this review, the Court confirmed that May has seven actions and appeals that were dismissed based on one of the foregoing reasons, namely, *May v. Culliver,* CA 10-0121-CG-C (S.D. Ala. Feb. 24, 2012) (failure to state a claim), *appeal dismissed* (11th Cir. Sept. 20, 2012) (frivolous); *May v. Patterson,* CA 12-0703-KD-N (S.D. Ala. Sept. 5, 2013) (malicious), *appeal dismissed* (11th Cir. June 4, 2014) (frivolous); *May v. Barber,* CA 13-0237-CB-C (S.D. Ala. July 22, 2013) (malicious), *appeal dismissed* (11th Cir. July 24, 2014) (frivolous); *May v. Patterson,* App. No. 13-14499-C (11th Cir. June 26, 2014) (frivolous) (corresponding district court case is CA 11-0675-KD-B (S.D. Ala. Sept. 9, 2013) (dismissed on defendants' summary judgment motion)). FN1

FN1. In addition to these actions and appeals, this Court's docket reflects nine other actions filed by May in addition to another action filed in the Northern District of Alabama. Based on a review of all May's actions, eight of May's actions contain claims based on medical issues related to his head, namely, *May v. Culliver,* CA 10-0121-CG-C; *May v. Patterson,* CA 11-0675-KD-B; *May v. Barber,* CA 13-0237-CB-C; *May v. Barber,* CA 13-0429-CB-M; *May v. Hetzel,* CA 14-0155-CG-C; *May v. Thomas,* CA 13-0385-CB-M; *May v. Barber,* CA 14-0479-WS-N; and *May v. Andrews,* CA 15-30-KD-M (pending). Furthermore, five of his actions have been dismissed pursuant to 28 U.S.C. § 1915(g), namely, *May v. Barber,* CA 13-0429-CB-M; *May v. Howard,* CA 13-0557-CG-C; *May v. Smith,* CA 14-0171-CG-B; *May v. Myers,* CA 14-0271-KD-B; *May v. Thomas,* CA 13-0385-CB-M; and *May v. Andrews,* CA 15-0030-KD-M.

*2 In order to avoid the dismissal of the present action pursuant to § 1915(g), May must satisfy the exception to § 1915(g), which requires that at the time of the complaint's filing, he show that he was "under imminent danger of serious physical injury." *See Adbul-Akabar v. McKelvie,* 239 F.3d 307, 315 (3d Cir. 2001) ("By using the term 'imminent,' Congress

indicated that it wanted to include a safety valve for the 'three strikes' rule to prevent impending harms, not those harms that had already occurred."), *cert. denied,* 533 U.S. 953 (2001); *Brown v. Johnson,* 387 F.3d 1344, 1349 (11th Cir. 2004) ("[A] prisoner must allege a present imminent danger, as opposed to a past danger, to proceed under section 1915(g)"); *Medberry v. Butler,* 185 F.3d 1189, 1193 (11th Cir. 1999) (ruling that the plaintiff must face imminent danger of serious physical injury at the time the complaint is filed, not at a prior time).

In determining if the exception to § 1915(g) is satisfied, "the issue is whether his complaint, as a whole, alleges imminent danger of serious physical injury." *Brown,* 387 F.3d at 1350. To make this showing, a plaintiff "must allege and provide specific fact allegations of ongoing serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent serious physical injury[.]" *Ball v. Allen,* CA No. 060496-CG-M, 2007 U.S. Dist. LEXIS 9706, at *4, 2007 WL 484547 at *1 (S.D. Ala. Feb. 8, 2007) (citation and quotation marks omitted) (unpublished) (Granade, C.J.). Plaintiff has not done this.

**II. Complaint.** (Doc. 1).

On January 16, 2015, the Court received May's Complaint, which bears a signature date of January 12, 2015. (Doc. 1 at 7). In the complaint, May identifies March 27, 2014, as the date of the complained of incident. (*Id.* at 4). He names as Defendants, Karen Stone, Doctor at Holman Correctional Facility ("Holman"); Bennie Andrews, Registered Nurse and Health Services Administrator at Holman; and Gary Hetzel, Warden at Holman. (*Id.* at 5). According to May, on January 27, 2014, he had an appointment with Dr. Iliff for frequent and severe headaches. *(Id.* at 4). May told Dr. Iliff that his AVMs and shunt issues might be causing him headaches. (*Id.*). Dr. Iliff submitted a request for a CT scan of May's head. (*Id.*).

On March 5, 2014, Defendant Dr. Stone met with May to discuss the report of the CT scan of his head taken on February 21, 2014. (*Id.*). In his Complaint,

May quotes from the report and takes issue with findings in the report, to-wit:

> The report reveals that (May) has had a cranlotomy in the occiput and there are some scattered clips of what are probable aneurysm type clips scattered about the posterior fossa and this produces flash artifacts. This study does suggest infarction of a portion of the portion medial right cerebellar hemisphere and a small portion of the left occipital lobe. "*There is a VP 'shunt tube' (called ventricular catheter) that enters the right superior occipital bone and goes into the right lateral ventricle. The ventricle[s] are mild*[*ly*] *prominent but not grossly enlarged and the ventricles are fairly symmetrical. No intracranial bleed or mass effect is seen. There is no study for comparison."* However, this shunt tube is only one part to [his] VP shunt. The report didn't mention any other parts, such as the reservoir, valve, or distal. Each VP shunt general[ly] has four parts but [his] VP shunt is a man made artifact and defendant[s] are not in possession of [his] medical record[s] from 1990 when the VP shunt was first placed in [his] ventricle, therefore, the defendants' really lack knowledge about the object therefor, standards of care [are] inadequate.

*3 (*Id.* at 4, 5, 8) (emphasis in original).

On March 27, 2014, May signed up for sick call to speak with Defendant Dr. Stone, because the radiologist did not mention May's hydrocephalus in her report, and to request to be seen by a neurologist and a neurosurgeon so they could review May's CT scan. (*Id.* at 8-9). May was not seen at sick call but instead received a written response by Defendant Dr. Stone, which stated:

> I do not need to see you again re: the matter of a neurologist or neurosurgeon consult related to your shunt. As I

> explained to you on your CCC (Chronic Care Clinic) visit of March 5, 2014, the CT of your head of February 21, 2014 is the same or even slightly improved as compared to the CT of July 22, 2009. This is my decision at this time.

(*Id.* at 9). May further alleges that on March 27, 2014, Defendant Hetzel "failed to ensure that the defendants were adequately trained, ... to oversee them[,] and [to] discipline them[,]" but without providing specific facts to support this claim against a corrections official. (*Id.* at 6).

Plaintiff contends that neither the CT scan of February 21, 2014 nor the CT scan of July 22, 2009 showed that his shunt is working as it is designed to work and that Defendant Dr. Stone made a decision that requires a specialist's attention. (*Id.* at 9). He asserts that Dr. Quindlen noted in his report of July 12, 2010 that Plaintiff's shunt "has collapsed and does not refill." (*Id.*).

On April 8, 2014, May filed a grievance complaining that he had signed up for sick call to request to be examined by a neurologist and/or neurosurgeon because hydrocephalus is present. (*Id.*). Defendant Andrews responded "that he had spoken with (Dr. Stone) regarding this complaint. She and I concur that compared to [his] recent CT scan and previous CT scan there had been no change. This is an indication that the shunt is working." (*Id.*). May maintains that neither his "CT scan of July 22, 2014[sic]" nor the CT scan of February 21, 2014 "reveals that the VP shunt is working as it was designed to work [and that Defendants] (Andrews) and (Stone) made a decision that required a specialist['s] attention." (*Id.* at 10).

May also asserts:

> [His] VP shunt was implanted in the right ventricle of his brain to manage the pressure from his hydrocephalus, a very danger[ous] brain condition due to an excessive buildup of cerebro spinal fluid. This excessive buildup of cerebro spinal fluid has caused [him] daily discomforts

> such as frequent and se [vere] headaches, [his] equilibrium is off, tire[d]ness irritability due to defendant's refuse[al] to ensure [he] received anything to alleviate his pains, and when [he] did not get prescribed something to alleviate his pains it came after lengthy delays because [his] family contacted a higher authority. Defendant[s'] obdurate refusal was clearly wanton[n]ess.

(*Id.*).

May further maintains that the total withdrawal of medical care constituted an "imminent danger of serious physical injury." (*Id.* at 8). Moreover, May claims that the "VP shunt has collapsed, does not refill, and can further deteriorate to the extent that it pose[s] an imminent danger of serious physical injury because [his] VP shunt['s] malfunction is left untreated." (*Id.* at 11).

*4 For relief, May requests punitive and compensatory damages and all costs taxed to the Defendants. (*Id.* at 7).

**III. Analysis.**

May's Complaint was filed between January 12, 2015, when he signed the document, and January 16, 2015, when it was received by the Court. (*Id.* at 7). *See Houston v. Lack,* 487 U.S. 266, 276, 108 S.Ct. 2379, 2385, 101 L.Ed.2d 245 (1988) (When a prisoner "deliver[s] [a pleading] to the prison authorities for forwarding to the court clerk," it is deemed filed.); *see Garvey v. Vaughn,* 993 F.2d 776, 783 (11th Cir.1993) (extending *Houston* to § 1983 actions filed by *pro se* prisoners). In this instance, the exact filing date need not be determined because the dates that are connected to the named Defendants range from March 5, 2014, to April 8, 2014, not near the time of the filing of the Complaint in January, 2015. (Doc. 1 at 7). That is, Defendant Dr. Stone interacted with May on March 5, 2014 and near March 27, 2104; Defendant Andrews, on April 8, 2014; and Defendant Hetzel, on March 27, 2014. (*Id.* at 5-7).

However, no allegations are present in the Complaint showing that at the time the Complaint was filed in January, 2015 that May was in imminent danger of a serious physical injury as a result of any of the Defendants' actions or inactions. *See Zatler v. Wainwright,* 802 F.2d 397, 401 (11th Cir. 1986) (finding that a plaintiff must establish a causal connection between a defendant's actions, orders, customs, or policies and a deprivation of the plaintiff's constitutional rights in order to state a claim upon which relief may be granted in a § 1983 action); *cf. Ashcroft v. Iqbal,* 556 U .S. 662, 678, 129 S.Ct. 1937, 1949, (2009) (holding that "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face") (citation omitted). May complains about Defendants' actions or inactions that occurred in the past, not near the time of the Complaint's filing. Even though this deficiency controls the disposition of this action, the court does recognize that May's underlying hydrocephalus and the condition of his VP shunt have been determined previously to be a serious medical need. *See May v. Patterson,* CA No. 11-675-KD-B (S.D. Ala.) FN2 (unpublished) (recognizing Plaintiff's serious medical need), *appeal dismissed as frivolous* (11th Cir. June 26, 2014) (holding that the District Court properly granted summary judgment) (Doc. 94). However, May made no allegations that he was in "imminent danger of serious physical injury" at the time of the Complaint's filing. Accordingly, the undersigned concludes that May's allegations do not demonstrate that he was "under imminent danger of serious physical injury" at the time the Complaint was filed. *Brown,* 387 F.3d at 1350.

FN2. In *May v. Patterson,* CA No. 11-675-KD-B, the medical Defendants furnished a copy of May's medical records with their Special Report. (Doc. 32). These records show that on July 12, 2010, Dr. Eugene Quindlen, a neurosurgeon at the University of South Alabama ("USA"), examined May for increased headaches and ataxia. (Doc. 32-3 at 19). He noted May's history of having a VP shunt placed in his brain in 1990 for hydrocephalus and of having a resection of

two AVMs in his brain in 1991 and 1992 by Dr. Wink Fisher at UAB. (*Id.*). Earlier, when Dr. Quindlen saw May in 2008, he could find no particular reason for May's headaches. (*Id.*). He observed that May had a history of a severe stroke, and was taking tegretol for seizures. (*Id.*).

The medical records show that on July 12, 2010, May was having severe headaches, dizzy spells, and fatigue (*id.* at 19); his gait was slightly more stiff than before; and Dr. Quindlen could palpate the shunt, which was noted as being collapsed and not refilling. (*Id.* at 20). His review of the x-rays showed no evidence of edema and no shunt x-rays being performed. (*Id.*). Dr. Quindlen found that May was "healthy appearing and in no apparent distress" and did not think that May had "severe elevated intracranial pressure [, but instead was] having poor shunt function." (*Id.*). His plan was to obtain shunt films and admit May to the hospital for a shunt revision. (*Id.*).

Shortly thereafter, on September 15, 2010, pursuant to the warden's request, the prison doctor extensively reviewed May's medical records, noting that May has hydrocephalus with a malfunctioning shunt, which had led to headaches and ataxia. (Doc. 32-3 at 5). The warden wanted the doctor to talk to May because he refused to have surgery performed by the neurosurgeon at USA and instead wanted to have his original surgeon at UAB, who had given him the shunt, perform the surgery. (*Id.*). The UAB option was not available. (*Id.*). **Thus, May refused to have the recommended surgery.** (*Id.* at 30).

On July 24, 2013, a Report and Recommendation was entered granting Defendants' summary judgment and finding no deliberate indifference to May's serious medical needs. (Doc. 69). The extensive

medical treatment that May received was recounted. After the District Court adopted the Report and Recommendation and entered Judgment for Defendants (Docs.74, 75), May appealed.

On June 26, 2014, the Eleventh Circuit Court of Appeals found May's appeal to be frivolous. (Doc. 94 at 7). The Eleventh Circuit noted that May's taking issue with Dr. Quindlen's recommendation was the root of the instant action and "cannot sustain a claim of deliberate indifference." (*Id.*). The Court opined that May had "not identified any evidence to refute or even undermine Dr. Quindlen's medical judgment, or otherwise demonstrate that the Defendant rendered inadequate or delayed medical care. **[Plaintiff] instead has demanded a physician of his own choosing.**" (*Id.*) (Emphasis added.)

In a later action, *May v. Barber,* CA No. 14-479-WS-N (S.D. Ala. Feb. 26, 2105), some of May's litigation history surrounding medical issues with his head is again recounted in the Magistrate Judge's Report and Recommendation recommending the dismissal of his action pursuant to 28 U.S.C. § 1915(g). (Doc. 2).

**IV. Conclusion.**

Because May cannot avail himself of § 1915(g)'s exception, and on account of his failure to pay the $400.00 filing fee at the time he filed his Complaint, this action is due to be dismissed without prejudice. *Dupree,* 284 F.3d at 1236 (holding that an action must be dismissed without prejudice when an inmate who is subject to 28 U.S.C. § 1915(g) does not pay the full filing fee at the time he initiates the action); *Vanderberg v. Donaldson,* 259 F.3d 1321, 1324 (11th Cir.) (holding that the filing fee paid must be paid by an inmate subject to § 1915(g) at the time an action is commenced), *cert. denied,* 535 U.S. 976 (2002). Therefore, it is recommended that this action

> be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g).

*May v. Stone*, CA No. 15-25-KD-B (Doc. 4 at 2-12), 2015 WL 3459035, at *2-5.

Likewise, the undersigned finds that Plaintiff did not show in the present Complaint that he was "under imminent danger of serious physical injury" at the time of the present Complaint's filing. That is, the allegations against Defendants occurred from March, 2014, to May, 2014, in both the prior and present actions, which was at least a year before the filing of this action in April, 2015. Thus, Plaintiff did not make the required showing that he was "under imminent danger of serious physical injury" at the time of the present Complaint's filing in order for his Complaint to come within the exception to § 1915(g). *Brown v. Johnson*, 387 F.3d 1344, 1349 (11th Cir. 2004) ("[A] prisoner must allege a present imminent danger, as opposed to a past danger, to proceed under section 1915(g)"); *Medberry v. Butler*, 185 F.3d 1189, 1193 (11th Cir. 1999) (ruling that the plaintiff must face imminent danger of serious physical injury at the time the complaint is filed, not at a prior time).

IV. <u>Conclusion</u>.

Because Plaintiff cannot avail himself of § 1915(g)'s exception, and on account of his failure to pay the $400.00 filing fee at the time he filed this action, Plaintiff's action

is due to be dismissed without prejudice. *Dupree*, 284 F.3d at 1236 (holding that an action must be dismissed without prejudice when an inmate who is subject to 28 U.S.C. § 1915(g) does not pay the full filing fee at the time he *initiates* the action); *Vanderberg v. Donaldson*, 259 F.3d 1321, 1324 (11th Cir.) (holding that the filing fee paid must be paid by an inmate subject to § 1915(g) at the time an action is commenced), *cert. denied*, 535 U.S. 976 (2002). Therefore, it is recommended that this action be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g).

Furthermore, the Court notes that since *May v. Stone*, CA No. 15-25-KD-B, 2015 WL 3459035 (S.D. Ala. June 1, 2015), *notice of appeal filed* (June 11, 2015), was filed near January 16, 2015, Plaintiff filed five other actions in this Court containing claims arising from medical issues with his head, which are in addition to his eight prior actions based on medical issues with his head, (which are listed in footnote 1 of the prior action's Report and Recommendation, *see* p.5, *supra*). Plaintiff's actions filed after January 16, 2015, are: *May v. Andrews*, CA No. 15-30-KD-M (S.D. Ala. April 24, 2015)(§ 1915(g) dismissal); *May v. Barber*, CA No. 15-201-WS-C (pending); *May v. Myers*, CA No. 15-211-KD-M (S.D. Ala. June 2, 2015)(§ 1915(g) dismissal); the present action; and *May v. Myers*, CA No. 15-304-KD-M (pending – no ifp filed or filing fee paid). Additionally,

on March 10, 2015, the Eleventh Circuit Court of Appeals found in an earlier action that Plaintiff's appeal was not frivolous and granted Plaintiff *in forma pauperis* status to proceed with his appeal in *May v. Hetzel*, CA No. 14-155-WS-M, 2014 WL 5072693, *adopted* (S.D. Ala. Oct. 7, 2014), *appeal filed*, (Nov. 4, 2014); Plaintiff's underlying action concerns the treatment he received for medical issues with his head.

Plaintiff's repeated filing of claims based on medical issues with his head and failure to heed the information contained in the Court's Report and Recommendations with respect to an appropriate time for filing an action that comes within § 1915(g)'s exception against an appropriate defendant is causing the Court to consider taking additional measures to curb Plaintiff's litigation activity based on claims concerning his head's medical issues. These measures would be in addition to the bar put in place by § 1915(g). *See Procup v. Strickland*, 792 F.2d 1069, 1072-73 (11th Cir. 1986) (describing sanctions, in a pre-PLRA case, that other courts have employed through their inherent powers when confronted with an inmate who filed repetitious claims, such limiting the number of IFP filings to six per year); *Smith v. Florida Dep't of Corrs.*, 369 F. App'x 36, 40 (11th Cir. 2010) (approving an injunction that mirrored the scope of § 1915(g) so as not to foreclose imminent danger

claims)[2]; *Miller v. Donald,* 541 F.3d 1091, 1099 (11th Cir. 2008) (noting, in its rejection of a "§ 1915(g)-plus" sanction, that "[t]he district courts will continue to develop mechanisms that protect their own jurisdictions consistent with their inherent power and limitations, and § 1915(g)'s relatively narrow rule-and-exception pairing neither subtracts from nor adds to them"); *Henderson v. Morales,* No. CV 312-092, 2012 WL 5473057, at *3 (N.D. Ga. Oct. 10, 2012)(imposing the sanction that the inmate submit a sworn statement stating that he is in imminent danger, which will subject him to criminal prosecution should he perjure himself, after the inmate was previously warned that his tactics to circumvent § 1915(g) were an abuse of process and a waste of judicial resources which may subject him to sanctions).

Considering that Plaintiff's appeal is before the Eleventh Circuit in *May v. Hetzel,* CA No. 14-155-WS-M, *supra*, a possibility exists that the Eleventh Circuit may address matters related to the medical issues with Plaintiff's head. In light of this pending appeal, this Court looks dimly on Plaintiff's repetitive filing of complaints concerning medical issues with his head, particularly those four actions filed after *in forma pauperis* status on appeal was granted on March 10, 2015, namely,

---

[2] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11TH CIR. R. 36-2 (2005).

CA No. 15-201—WS-C, CA No. 15-211-KD-N, CA No. 15-230-KD-M, and CA No. 15-304-KD-M. Furthermore, the Court observes that Plaintiff's medical issues with his head were previously before the Eleventh Circuit in *May v. Patterson*, CA No. 11-675-KD-B, 2014 WL 5072693, *adopted* (S.D. Ala. Oct. 7, 2014) (granting defendants' summary judgment), *appeal denied* (11th Cir. June 26, 2014) (finding in an opinion the appeal was frivolous).

Plaintiff is **WARNED** that his continued filing of repetitive *in forma pauperis* actions involving his head's medical issues that do not satisfy § 1915(g)'s exception may result in the imposition of sanctions because he is abusing the Court and using its spare resources, which deprives the Court from addressing other actions. *See Malautea v. Suzuki Motor Co.*, 987 F.2d 1536 (11th Cir. 1993) (imposing sanctions after warnings were issued), *cert. denied*, 510 U.S. 863 (1993); *Moon v. Newsome*, 863 F.2d 835 (11th Cir.) (same), *cert. denied*, 493 U.S. 863 (1989); *Howard v. Langston*, 567 F. App'x 289 (5th Cir. 2014) (imposing monetary sanctions after previously warning the § 1915(g)-barred prisoner against filing frivolous matters and advising him to review any pending appeals and dismiss those that are frivolous); *Smith v. Warden, Hardee Corr. Inst.*, 597 F. App'x 1027, 1031-32 (11th Cir. 2015) (holding that "[a] district court may sanction a party for filing a pleading that lacks a reasonable factual basis; that is predicated on a frivolous

legal theory; or that is submitted in bad faith for an improper purpose" and that the prisoner, "who is a frequent filer, should bear his own costs to curtail his abusive litigation"). The Clerk is **DIRECTED** to reflect prominently on the docket sheet in this action that Plaintiff has been was warned about filing repetitive *in forma pauperis* complaints about medical issues with his head that do not meet § 1915(g)'s exception.

**NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. L.R. 72.4. The parties should note that *under Eleventh Circuit Rule 3-1,* "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th

Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 22nd day of June, 2015.

s/ BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE